Dodd *et al.*, assignees, *vs.* Hammock *et al.*

---

GREEN T. DODD *et al.*, assignees, plaintiffs in error, *vs.* CICERO C. HAMMOCK *et al.*, defendants in error.

1. The United States courts have exclusive jurisdiction of all matters and proceedings in bankruptcy.
2. Trover by the assignees of a bankrupt is, on its face, such a proceeding When brought in a state court, a demurrer thereto for want of jurisdiction, was properly sustained.

BLECKLEY, Judge, dissented.

United States Courts. Jurisdiction. Bankrupt. Before Judge CLARK. City Court of Atlanta. December Term, 1876.

To the report contained in the opinions, it is only necessary to add, that the action was trover in the statutory form by plaintiffs, "who sue as assignees in bankruptcy of," etc. Title was claimed to be in plaintiffs.

JOHN D. CUNNINGHAM; P. L. MYNATT; HENRY HILLYER, for plaintiffs in error.

JOHN L. HOPKINS; McCAY & TRIPPE, for defendants.

WARNER, Chief Justice.

The plaintiffs, as the assignees in bankruptcy of West,

Edwards & Co., brought their action against the defendants to recover the possession of certain described personal property in the plaintiffs' declaration mentioned, of the alleged value of $2,371.47, to which property the plaintiffs claim title, and which the defendants refused to deliver to them. The defendants demurred to the plaintiffs' declaration on the ground that the court did not have jurisdiction of the case. The court sustained the demurrer, and the plaintiffs excepted.

The question presented for our judgment and decision in this case, is whether the courts of this state have concurrent jurisdiction of matters and proceedings in bankruptcy, with the courts of the United States, so far as the collection of the assets of the bankrupt are concerned, when the amount thereof exceeds the sum of five hundred dollars, or whether the latter courts have the *exclusive* jurisdiction?

Whatever may have been the concurrent jurisdiction of the state courts with the courts of the United States in such cases prior to the adoption of the revised statutes of the United States, the 711th section thereof, vested the *exclusive* jurisdiction in the courts of the United States. The jurisdiction conferred upon the distict courts of the United States, in bankruptcy cases, by the act of 1867, was "the collection of all the assets of the bankrupt." The 711th section of the revised statutes declares, that "the jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be *exclusive* of the courts of the several states." One of the cases and proceedings thereinafter mentioned, is "of all matters and proceedings in bankruptcy." The collection of all the assets of the bankrupt, is one of the necessary and important matters and proceedings of the bankrupt court, as provided by the bankrupt act of 1867, and the 711th section of the revised statutes of the United States declares, that the jurisdiction vested in the courts of the United States, "of all matters and proceedings in bankruptcy, shall be exclusive of the courts of the several states." That such was

the intention of congress, is manifested by the fact, that subsequently to the adoption of the revised statutes, the act of 22d of June, 1874, was passed, which provided that the bankrupt court having charge of the estate of any bankrupt, may direct that any of the legal assets or debts of the bankrupt, when the same does not exceed five hundred dollars, shall be collected in the courts of the state where such bankrupt resides. If congress had not supposed, that by the adoption of the 711th section of the revised statutes, hereinbefore cited, that the United States courts had *exclusive* jurisdiction of all matters and proceedings in bankruptcy, the act of the 22d of June, 1874, authorizing the bankrupt court to direct that the legal assets of the bankrupt, to the extent of five hundred dollars, should be collected in the courts of the state in which the bankrupt resided, would not have been necessary, as the state courts had concurrent jurisdiction with the United States courts, to collect the bankrupt's assets without regard to the amount thereof. Claflin *vs.* Houseman, assignee, 3d Otto's Rep., 130.

But it has been suggested that any plaintiff has the legal right to sue in the state courts for a deprivation of his property, and that there is nothing alleged in the plaintiffs' declaration which will take this case out of that general rule. The plaintiffs sue as the assignees in bankruptcy of West, Edwards & Co., and claim title to the property sued for in that capacity. The plaintiffs cannot claim title to the property sued for as the assignees in bankruptcy of West, Edwards & Co., unless there had been an adjudication in bankruptcy, adjudging them to be bankrupts in accordance with the provisions of the bankrupt act of 1867, and thereby vesting the title to the property sued for in the plaintiffs as the assignees in bankruptcy of West, Edwards & Co., under the provisions of that act. It necessarily follows, therefore, that when the plaintiffs claim title to the property sued for as the assignees in bankruptcy of West, Edwards & Co., that they claim title to it as part of the assets of the adjudicated

bankrupts whose assignees they are. West, Edwards & Co. could not, in any legal sense, be considered bankrupts until they had been adjudicated to be so by the 'proper tribunal, and until that had been done the plaintiffs could not have become their assignees in bankruptcy, and had the title to their property vested in them in that capacity, so as to authorize them to sue for it as they have done, as appears upon the face of their declaration. The suit for the prop ty mentioned in the plaintiffs' declaration by the plaintiffs as the assignees in bankruptcy of West, Edwards & Co., to which they claim title in that capacity, relates to "matters and proceedings in bankruptcy" of which, by the 711th section of the revised statutes before cited, the courts of the United States have the *exclusive* jurisdiction. See the case of Olcott, assignee, *vs.* Maclean *et al.*, National Bankrupt Register, 1877, page 79.

Let the judgment of the court below be affirmed.

JACKSON, Judge, concurred, but furnished no written opinion.

BLECKLEY, Judge, dissenting.

I dissent, respectfully, from the judgment of the court just pronounced. It seems to me that when assignees in bankruptcy sue, in trover or statutory complaint, for ' property to which they claim title as assignees, there is no legal *necessity* for treating the suit as a *proceeding* in bankruptcy, or the subject as a *matter* in bankruptcy. The assignees have the legal title—they are owners. For aught that appears on the face of the declaration before us, the plaintiffs, as assignees, may once have had the actual possession. Because they sue as assignees, it does not follow that they are for the first time endeavoring to reduce the assets to possession; their real grievance may be that they have been deprived of an existing possession, which they now seek to re-establish, or to recover damages instead. It cannot harm a suit for this purpose, that the plaintiffs disclose in their declaration the

nature of their title, and sue in their real character. The declaration pursues the form laid down in our Code; and under it, any evidence is admissible that will establish a conversion on the part of the defendant against the plaintiffs' right. There is no hint in the pleadings that the cause of action involves any *tort* or transaction prior in date to the adjudication of bankruptcy, or even to the appointment of the assignees. On its face, the declaration is simply a suit by the owners of personal property against a wrongdoer. The wrong is not alleged to be a breach of the bankrupt act of the United States. To assume that it will turn out in evidence to be of that special class, seems to me unwarranted. Why should it not as well be a more general *tort*— one that violates the property laws of the state, and is, therefore, amenable to the ordinary principles of jurisprudence? It cannot be that the property of assignees in bankruptcy is out of the protection of the state—that to steal it is not larceny, or to seize and appropriate it is not a conversion. If the plaintiffs have title, as they allege, why should that title not serve them in the courts of Georgia against a wrongdoer, though one of its links be the adjudication in bankruptcy and the consequent deed of assignment? Purchasers under them would derive title depending, in part, upon these same elements. Would our courts hesitate to entertain actions of trover in behalf of such purchasers, because their title could not be made out without tracing it through the assignees and the deed of assignment?

In my view of the present action, it is as remote from a proceeding or matter in bankruptcy, as would be the suit of an administrator, for a like cause of action, from the matters of administration of which the court of ordinary has exclusive cognizance. Under the Code, §331, par. 10, the exclusive jurisdiction of this latter court is made to extend to all such "matters and things as appertain or relate to estates of deceased persons." See substantially the same language in Cobb's Dig., 283, 284. Yet administrators, as such, sue, and have always sued, for property or money, in the supe-

rior, county, city and justice's courts, just as other plaintiffs. It has never been suggested that their suits were not ordinary civil cases, or that the subjects of them were comprehended under the terms, "matters and things" which "appertain or relate to estates of deceased persons" In England, assignees in bankruptcy have, I think, always sued in the various courts of law, with as little restriction as other people. Receivers in equity, when authorized to sue at all, are allowed to enter the appropriate local tribunals, and the actions they bring are not considered as part of the proceedings in which they were appointed, but complete suits in and of themselves.

As to the *proviso* in the amendment to the bankrupt act, which empowers the district court to send assignees into the state courts to sue small claims, I regard it as very satisfactory evidence that, in the view of congress, the jurisdiction of those courts was not before taken away or inhibited. The object of the *proviso* was not to open the state courts, but to keep assignees from entering the federal courts unnecessarily. The language of the *proviso* plainly recognizes the state courts as already having jurisdiction in the class of cases with which it deals. No restriction is thereby taken off of the state courts, or put on. Nothing is said as to what those courts may or may not do. Assignees are told what *they* shall do, if ordered by the proper district court. They can do the same thing without orders, but must do it in case orders are addressed to them. The district court can turn them away from that court and oblige them to resort to the state tribunals, a power which did not formerly exist.