TEFFT *et al.* v. STERNBERG *et al.*, (two cases.

(*Circuit Court, S. D. Georgia, W. D.* July 27, 1887.)

1. COURTS—CONFLICTING STATE AND FEDERAL JURISDICTION.

When property is seized and held under mesne or final process of either a state or United States court, it is in the custody of the law, and within the exclusive jurisdiction of the court from which the process has issued, for the purposes of the writ, and the possession of the officer having it in custody cannot be disturbed by another court of co-ordinate jurisdiction. Such disturbance would be to invade the jurisdiction of the court by whose command it is held, and to violate the law which that jurisdiction is appointed to administer.

**2. SAME.**

Of course, this rule is not applicable in those cases where the courts of the United States exercise superior jurisdiction for the purpose of enforcing the supremacy of the constitution and laws of the United States.

**3. SAME—MORTGAGE FORECLOSURE—INJUNCTION.**

The statutes of Georgia provide that, for the foreclosure of a chattel mortgage, the mortgagee shall make affidavit of the amount of principal and interest due thereon, annex the affidavit to the mortgage, and file both in the office of the clerk of the superior court of the county in which the mortgagor resides. The clerk shall thereupon issue execution, bearing teste in the name of the judge of the court, commanding the sale of the mortgaged property, and the sheriff shall proceed to sell the same as in other judicial sales. The mortgagor may avail himself of his defenses by making affidavit of illegality to the execution, and, when it is filed, the levying officer shall postpone the sale, and return all the papers to the court from which execution issued for a trial of the case by jury. *Held*, that such a foreclosure is a proceeding of the state court, within the meaning of Rev. St. U. S. § 720, providing that no injunction shall be granted by a federal court to stay proceedings in a state court.

**4. SAME.**

Where a sheriff under such an execution has taken possession of the property of an insolvent mortgagor for the purpose of such foreclosure, the court from which process issued has complete jurisdiction of the subject, and the federal courts will decline to appoint a receiver to take charge of the balance which may remain after satisfaction of the mortgage liens, and to distribute the same to the general creditors.

In Equity. On bill for injunction and appointment of a receiver.

*Walter R. Brown, Wimbish & Gilbert*, and *Francis D. Peabody*, for Tefft, Weller & Co.

*Hill & Harris*, for Dunham, Buckley & Co.

*Peabody, Brannon & Hatcher* and *L. F. Garrard*, for defendants.

SPEER, J. Separate bills were filed by the plaintiffs, citizens of New York, against Sternberg & Loewenherz, an insolvent firm of Columbus, in this district, with averments which, if proven, under repeated decisions of this court, make an unquestionable case for the appointment of a receiver to take charge of the assets of the insolvent firm, and to hold them, subject to proper disposition by the final decree of the court, for the satisfaction of the creditors. A temporary injunction having been granted, it appeared on the hearing of the rule to show cause why an injunction proper should not issue, and a receiver be appointed, that the entire stock of merchandise of the respondents, Sternberg & Loewenherz, amounting in value to about $150,000, had been taken in charge by J. G. Burrus, sheriff of Muscogee county and of the superior court of the state of Georgia for that county, by virtue of the foreclosure of several chattel mortgages made by the insolvent firm to certain preferred creditors. These mortgages, in the aggregate, did not exceed the sum of $31,566; but it appeared that various other creditors had placed in the hands of the sheriff other mortgages amounting to $15,415, and, under the provisions of a state statute, (Code, §§ 3969, 3977,) claimed the right to share in the distribution of the fund to be raised by the sale of the merchandise levied upon under the chattel mortgage *fi. fa.* Certain other creditors had sued out garnishment against the sheriff to subject any balance in his hands to their debts, and, subsequently to the filing of the bills and to the issuance of the temporary injunction by this court, a bill similar to those pending here had been presented to the Honorable JAMES M.

SMITH, the judge of the superior court of Muscogee county, Ga., by which an injunction and the appointment of a receiver were sought before that tribunal. It appeared further that, after the satisfaction of the mortgages which had been foreclosed under the state law, and also the mortgages which had been placed in the hands of the sheriff to share in the fund, all of which last-mentioned mortgages were left with the sheriff before the litigation here began, there will be large values in the hands of the sheriff which it is insisted are subject to distribution by this court, and which its receiver, when one is appointed, would be entitled to have for the benefit of the creditors who have sought this forum to enforce their rights.

On the hearing the complainants were, at once, confronted with the proposition that the foreclosure of the chattel mortgages, and the seizure of the stock by the sheriff, had given absolute and exclusive jurisdiction of the subject-matter to the court of the state, and that the court of the United States could not, with judicial propriety, interfere; and upon this proposition a great many authorities were cited, among them *Diggs* v. *Wolcott*, 4 Cranch, 179; section 720, Rev. St.; *Dial* v. *Reynolds*, 96 U. S. 340; *Hagan* v. *Lucas*, 10 Pet. 400; *Taylor* v. *Carryl*, 20 How. 583; *Freeman* v. *Howe*, 24 How. 451; *Chapin* v. *James*, 23 Amer. Rep. 412. The plaintiffs, in reply to the obvious weight of these authorities, pressed with much force the argument that the foreclosure of a chattel mortgage upon an *ex parte* affidavit, and the subsequent sale of the mortgaged property, as directed by the Georgia statute, do not constitute "proceedings in any court of a state," and they also maintained that the custody of the property by the sheriff was not the custody of the state court. They relied upon the case of *Weil* v. *Calhoun*, 25 Fed. Rep. 865, where Judge McCAY held, in the circuit court for the northern district of Georgia, that, where the ordinary of a county is required by a special statute to examine the returns, count the votes, and declare the result of a local election, his action in this regard is not such a "proceeding of a court" as will inhibit an injunction from a federal court. A stronger case is that of *Carpenter* v. *Talbot*, 33 Fed. Rep. 537, where it was held that a foreclosure sale by a public officer, under a chattel mortgage, is not a proceeding in a state court, within the meaning of section 720, Rev. St. There seems, however, to be a palpable distinction between the Vermont statute, in contemplation of which the decision in *Carpenter* v. *Talbot* was made, and the Georgia statute, under which the chattel mortgages here were foreclosed. The former provides that, where the condition of the mortgage is broken, the mortgagees may cause the mortgaged property to be sold "at public auction, by a public officer." The Georgia statute requires the mortgagee to go before some officer authorized to administer an oath, and, having made affidavit of the amount of principal and interest due on the mortgage, to annex the affidavit to the mortgage, and file both in the office of the clerk of the superior court in the county where the mortgagor resides, etc. It shall then be the duty of the clerk to issue an execution directed "to all and singular the sheriffs and coroners of this state," commanding the sale of the mort-

gaged property to satisfy the principal and interest, together with the cost of proceedings to foreclose the said mortgage. The sheriff then proceeds to advertise and sell, as in other judicial sales. The mortgagor may avail himself of his defenses. These are presented by an affidavit of illegality to the execution. When this affidavit is filed, the levying officer, by direction of the statute, shall postpone the sale, and return all the proceedings and papers in the case to the court from which the execution issued to be tried by a jury, etc.

Now, can it be doubted that this is a proceeding in a court of the state? It is altogether unlike the foreclosure in the case from Vermont. Indeed, the Code of Georgia (section 3504) providing that an affidavit which is the "foundation of a legal proceeding" cannot be amended, the supreme court of the state, in the case of *Rich* v. *Colquitt*, 65 Ga. 115, held that the affidavit as to the principal and interest due on a mortgage, under section 3971, was not amendable, it being, of course, the "foundation of a proceeding at law." Besides, the execution itself must bear test in the name of the judge of the court, (Code, § 3632,) and must be returned and docketed as other executions, (Id. § 3635.) It follows, therefore, indisputably in the opinion of the court, that the foreclosure of a mortgage upon personalty in Georgia is a proceeding in the state court; that our duty as to this question is plainly defined by the supreme court of the United States in numerous decisions, many of which have been cited by defendants' solicitors, *supra*, and many others equally as cogent and conclusive. These are admirably collated and considered in the case of *Covell* v. *Heyman*, 111 U. S. 176, 4 Sup. Ct. Rep. 355, Mr. Justice MATTHEWS delivering the opinion of the court. That eminent jurist quotes with approval the following language of Mr. Justice NELSON in *Freeman* v. *Howe*, *supra*, which itself was but an application of *Taylor* v. *Carryl*, 20 How. 583:

"The main point there decided was that the property seized by the sheriff under the process of attachment from the state court, and while in the custody of the officer, could not be seized or taken from him by a process from the district court of the United States, and that the attempt to seize it by the marshal, by notice or otherwise, was a nullity, and gave the court no jurisdiction over it."

And, further:

"The majority of the court were of opinion that, according to the course of decision in the case of conflicting authorities under a state and federal process, and in order to avoid unseemly collision between them, the question as to which authority should, for the time, prevail did not depend upon the rights of the respective parties to the property seized, whether the one was paramount to the other, but upon the question which jurisdiction had first attached by the seizure and custody of the property under its process."

It does not matter whether it is process *in rem* or process at law or in equity, the right to hold the property belongs to the court under whose process it was seized. Chancellor Kent, in 1 Comm. 410, having stated that "if a marshal of the United States, under an execution in favor of the United States against A., should seize the person or property of B., then the state courts have jurisdiction to protect the person and the prop-

erty so illegally invaded," the court proceeds to point out the error of
this proposition, and adds: "We need scarcely remark that no govern-
ment could maintain the administration or execution of its laws, civil or
criminal, if the jurisdiction of its judicial tribunals were subject to the
determination of another."

The proposition, as settled by an ample and, indeed, irresistible array
of decisions, may be broadly stated as follows: When property is seized
and held under mesne or final process of either a state or United States
court, it is in the custody of the law, and within the exclusive jurisdic-
tion of the court from which the process has issued, for the purposes of
the writ, and the possession of the officer having it in custody cannot be
disturbed by another court of co-ordinate jurisdiction. Such disturb-
ance would be to invade the jurisdiction of the court by whose command
it is held, and to violate the law which that jurisdiction is appointed to
administer. Of course this rule is not applicable in those cases where
the courts of the United states exercise superior jurisdiction for the pur-
pose of enforcing the supremacy of the constitution and laws of the United
States. *Covell* v. *Heyman, supra.* Mr. Justice MILLER, in *Buck* v. *Col-
bath,* 3 Wall. 341, gives an admirable statement of the law, as follows:

"Whenever property has been seized by an officer of the court by virtue of
its process, the property is to be considered as in the custody of the court, and
under its control, for the time being, and that no other court has a right to
interfere with that possession, unless it be some court which may have a di-
rect supervisory control over the court whose process has first taken posses-
sion, or some superior jurisdiction in the premises."

The case of *Covell* v. *Heyman, supra,* and the opinion of Mr. Justice
MATTHEWS, afford the following valuable observations on this subject:

"The forbearance which courts of co-ordinate jurisdiction, administered
under a single system, exercise towards each other, whereby conflicts are
avoided by avoiding interference with the process of each other, is a principle
of comity, with perhaps no higher sanction than the utility which comes from
concord; but, between state courts and those of the United States, it is some-
thing more. It is a principle of right and of law, and therefore of necessity.
It leaves nothing to discretion or mere convenience. These courts do not be-
long to the same system so far as their jurisdiction is concurrent; and, although
they co-exist in the same space, they are independent, and have no common
superior. They exercise jurisdiction, it is true, within the same territory,
but not in the same plane; and, when one takes into its jurisdiction a specific
thing, that *res* is as much withdrawn from the judicial power of the other as if it
had been carried physically into a different territorial sovereignty. To attempt
to seize it by a foreign process is futile and void. The regulation of process,
and the decision of questions relating to it, are part of the jurisdiction of the
court from which it issues." "The jurisdiction of a court," said Chief Justice
MARSHALL, "is not exhausted by the rendition of its judgment, but continues
until that judgment shall be satisfied. Many questions arise on the process,
subsequent to the judgment, in which jurisdiction is to be exercised." *Way-
man* v. *Southard,* 10 Wheat. 1.

These citations of elevated and paramount authority are, perhaps,
more copious than is requisite, but since nothing would so seriously prej-
udice the character and usefulness of the courts of the United States or
of the state as those unseemly conflicts of authority, which not only ex-

cite communities, but which, both in this country and in England, have afforded occasions for intemperateness in the assertion of jurisdiction on the one hand, and for its denial on the other, hardly comporting with the serene and impartial reserve of the bench, the settled rule upon the subject, whenever its announcement is appropriate, cannot be too strongly emphasized or too amply supported by those impregnable statements of principle which stand out in the decisions of the supreme court of the United States,—statements which bear in lucid phrase the precise expression of sovereign and beneficent law. Moreover, the apparent conflicts of authority between the courts of the state and of the United States furnish no proper occasion for nice or narrow divisions of the subject of litigation,—none for divisions of jurisdiction. In a case like that before the court, the court first taking jurisdiction of the substance of the litigation should dispose of all the incidents.

It is true that there will be, doubtless, a balance of some amount in the hands of the sheriff after the more important liens there depending are satisfied, and this court might be justified by the letter of the law in appointing a receiver, to whom the sheriff would account for such balance. This, however, would not accord with that spirit of absolute reserve which, in matters of concurrent jurisdiction, should mark the action of the courts of the United States towards the state courts. The superior court of Muscogee county has the same power to dispose of all the matters in litigation that would obtain here. It is therefore presumably unnecessary, were it otherwise seemly and appropriate, to go forward and grant the extraordinary relief sought. Besides, if the complainants choose to press their claim for a general and final decree, as usual in equity in this court, they may then, by a petition *pro inter esse suo*, intervene in the state court, and ask for distribution of the fund or balance. They may intervene at once in the litigation pending there. There is ample authority for this course to be found in *Krippendorf* v. *Hyde*, 110 U. S. 276, 4 Sup. Ct. Rep. 27, and especially in the recent case of *Gumbel* v. *Pitkin*, 124 U. S. 131, 8 Sup. Ct. Rep. 379, where the procedure indicated is fully considered.

The superior court of Muscogee county being in control of the subject and the substance of the litigation, the law and the principles of comity alike forbid the action and orders sought by the plaintiffs, and the court, for the reasons stated, declines to grant the application for an injunction and for the appointment of a receiver.